UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MARCUS D. FLEMING,

    Petitioner,

v.                                    Case No. 3:20cv5990-LC-HTC

M. V. JOSEPH as WARDEN of the
  FEDERAL PRISON CAMP,

    Respondent.
_____/

REPORT AND RECOMMENDATION

In December 2020, Petitioner, Marcus D. Fleming, a federal prisoner then proceeding *pro se*,[1] filed a petition under 28 U.S.C. § 2241, ECF Doc. 1, seeking an order compelling the Federal Bureau of Prisons ("BOP") to recalculate his credits and release date under the First Step Act (the "FSA").[2] The matter was referred to the undersigned Magistrate Judge for preliminary screening pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). Because Petitioner argued his release date should have been December 12, 2020, the Court expedited the Respondent's response deadline. The Respondent has now responded and the time for Petitioner

---

[1] On February 23, 2021, attorney Eric C. Nemecek was allowed to appear for Petitioner *pro hac vice*. ECF Doc. 12.
[2] First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018)

to submit a reply has expired.[3] Thus, Petitioner's case is ripe for consideration. Upon review, the undersigned respectfully recommends that the petition be dismissed because Petitioner has not exhausted his administrative remedies and the request for relief is premature.

## I. BACKGROUND

Fleming is a federal prisoner serving an 84-month sentence[4] for Possession with Intent to Distribute a Controlled Substance. At the time he filed the instant petition, he was incarcerated at the Federal Prison Camp in Pensacola, Florida ("FPC – Pensacola"), with a projected release date of March 5, 2022. ECF Doc. 13 at 5.

In his supplemental brief, Fleming alleges the BOP wrongly refused to apply earned FSA credits, which would have resulted in an earlier release date. ECF Doc. 13. He alleges he successfully participated in or completed several evidence-based recidivism reduction programs and other productive activities during his term of

---

[3] Upon being granted leave to appear *pro hac vice*, attorney Nemecek filed a supplemental brief in support of the Petition, ECF Doc. 13. The Respondent was given additional time to respond based on the supplemental brief, ECF Doc. 15, and responded (with exhibits) to the Petition, ECF Doc. 1, as supplemented by ECF Doc. 13, on March 11, 2021. ECF Doc. 16. Petitioner was allowed to file a reply within fourteen (14) days on March 11, 2021, ECF Doc. 17, but to date, no reply has been received

[4] The Respondent incorrectly states that Petitioner was serving a 120-month sentence and cites to Exhibit 1. ECF Doc. 16 at 2. (The Response lacks page numbers, in violation of Local Rule 5.1(C), so this page number regards the PDF page.). Exhibit 1 (ECF Doc. 16-1) is not helpful, however, as it contains the Public Information Inmate Data for "PULGARON, TOMAS", an inmate wholly unrelated to this case. A review of the docket of Fleming's criminal case reveals that, although Petitioner was originally sentenced to 120 months, he was resentenced after remand from the Sixth Circuit to 84 months. *See United States v. Fleming*, 5:17cr81 (N.D. Ohio April 8, 2019), Amended Judgment at ECF Doc. 78.

Case No. 3:20cv5990-LC-HTC

incarceration. ECF Doc. 13 at 4-5. Several of these programs and activities, he argues, qualify for earned time credits under the FSA, which would effectively reduce the length of Fleming's remaining sentence as well as make him eligible earlier for placement in a residential reentry center ("RRC").

In between the time Petitioner filed the petition and the date of this Order, however, the BOP gave Petitioner a Home Confinement placement date of March 25, 2021.[5] ECF Doc. 16-4 at ¶ 12. According to the declaration of Eric Mamula, the Unit Manager at FPC Pensacola, this "equivocates to a 346-day placement [and] … is well beyond what is considered a standard Residential Reentry Center or Home Confinement placement for an 84-month sentence and [is] nearly six (6) full months before his Home Confinement Eligibility Date of September 5, 2021." *Id.* The March 25, 2021 date was determined by the Residential Reentry Manger "to give local institution staff adequate time to ensure COVID-19 safety protocols are adhered to; to include pre-release COVID-19 testing and quarantine, and to allow enough time for him to safely travel via furlough to his home of residence in Detroit, Michigan." *Id.*

Although Fleming has been placed into an RRC, and thus any relief in that regard is moot, the undersigned finds it nonetheless necessary to address the petition.

---

[5] The Bureau of Prisons' inmate locator website (https://www.bop.gov/inmateloc/) indicated on April 2, 2021, that Fleming has been released to RRM Detroit a "residential reentry management" facility.

Case No. 3:20cv5990-LC-HTC

Specifically, Petitioner argues he should have begun his RRC placement in December 2020, and that such earlier placement would have resulted in earlier complete release from confinement. Thus, his placement in the RRC does not moot the petition.

As set forth below, however, upon consideration, the undersigned finds the petition is subject to dismissal on two grounds. First, Petitioner failed to exhaust administrative remedies. Second, the provision of the FSA pursuant to which Petitioner seeks to benefit does not go into effect until January 15, 2022.

## II.   EXHAUSTION

A petitioner seeking relief under 28 U.S.C. § 2241 must first exhaust available administrative remedies. *See Santiago–Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015); *Davis v. Warden, FCC Coleman-USP I*, 661 F. App'x 561, 562 (11th Cir. 2016). Although exhaustion is not a jurisdictional prerequisite to suit, it is still a requirement. *See Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004) (per curiam), *abrogated by Santiago–Lugo*, 785 F.3d at 471, 474–75, 474 n.5. Indeed, "the exhaustion requirement applies to the computation of sentence credit awards," such as at issue here. *Barron v. Adduci*, No. 7:15cv1258/AKK-TMP, 2016 WL 3958729 at *1 (N.D. Ala. June 14, 2016) (citing *United States v. Nyhuis*, 211 F.3d 1340, 1345 (11th Cir. 2000) (a claim asking the court to grant credit for time-served

can be brought under Section 2241 only after a petitioner has exhausted administrative remedies)).

The courts in this circuit which have addressed this issue have required exhaustion. *See, e.g.*, *DeJesus v. Woods*, No. 2:19cv121-WHA, 2019 WL 3326199 at *5 (M.D. Ala. June 21, 2019) (recommending dismissal of § 2241 petition seeking good conduct time and placement on home confinement under FSA as premature and explaining that, even if petition were ripe for review, court would not address merits of claims because petitioner did not exhaust administrative remedies); *Haynes v. Edge*, No. 2:19cv15, 2019 WL 3326221 at *2 (S.D. Ga. June 12, 2019) (recommending dismissal of § 2241 petition seeking good conduct credit under FSA as premature and explaining that, even if not premature, petition "would be subject to dismissal because he failed to exhaust his available administrative remedies prior to the filing of this Petition"); *Gibson v. Keaton Corr.*, No. 4:19CV391-WS/CAS, 2019 WL 5927732, at *2 (N.D. Fla. Oct. 8, 2019), *report and recommendation adopted*, No. 4:19CV391-WS/CAS, 2019 WL 5902141 (N.D. Fla. Nov. 12, 2019) ("In this case, nothing indicates Gibson exhausted his administrative remedies before filing this § 2241 petition. . . . Accordingly, this petition should be dismissed without prejudice. ").

To properly exhaust administrative remedies, a petitioner must comply with the applicable agency's deadlines and procedural rules. *See Woodford v. Ngo*, 548

U.S. 81, 90–91 (2006) (addressing the exhaustion requirement in the Prison Litigation Reform Act). The BOP provides an internal grievance procedure for its inmates. *See* 28 C.F.R. § 542.10, *et seq*. A federal inmate must "first present an issue of concern informally to staff" who must "attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy." *See* 28 C.F.R. § 542.13(a). If the informal resolution procedures fail to resolve the issue, generally a prisoner must complete a three-step sequential formal process.

As to the formal grievance procedures, an inmate first must submit a Request for Administrative Remedy on the BP-9 form to the Warden within twenty days of the incident. *See* 28 C.F.R. § 542.14(a). If the inmate is not satisfied with the Warden's response, he may submit an appeal on the BP-10 form to the Regional Director within twenty days of the Warden's response. *See* 28 C.F.R. § 542.15(a). If the inmate is dissatisfied with the Regional Director's response, he may submit an appeal on the BP-11 form to the General Counsel at the Central Office within thirty days of the Regional Director's response. *See id.*

Here, Petitioner only exhausted the grievance procedures on his claim that he was FSA-eligible (indeed, officials agreed he was eligible); however, he has not exhausted the grievance procedure as to when the BOP had to apply the FSA credits to him or as to the calculation of the credits.

On March 31, 2020, Petitioner began the grievance process for requesting application and calculation of his FSA credits with an informal inmate request to "Mr. Mamula," the Unit Manager at FPC Pensacola. *Id.* at 5. Mamula responded that the FSA legislation "gives the Bureau until January 15, 2022 to be fully up and running due to an extended phase in process. In the meantime, many current and prospective inmates may not get either the benefit or the full benefit of these planned programs due to timing issues." ECF Doc. 16-2 at ¶ 15. Petitioner did not follow through with the grievance procedure as there is no evidence he filed a BP-9 or BP-10 to the appropriate officials following this response from the Unit Manager. *Id.*

Instead, Petitioner filed a BP-11 directly to the Central Office, arguing staff at FCP - Pensacola have been refusing to apply FSA credits to him because of a provision of the FSA that gives the BOP until January of 2022 to phase-in programs and productive activities under the FSA for all prisoners. ECF Doc. 16-3 at 40. On December 17, 2020, the Central Office's Administrator of National Inmate Appeals responded with the following:

> We have reviewed documentation relevant to your appeal and, based on the information gathered, concur with the manner in which the Warden and Regional Director responded to your concerns at the time of your Request for Administrative Remedy and subsequent appeal. The First Step Act allows eligible inmates to earn additional time credits for successfully participating in evidence-based recidivism reduction programming or productive activities. The record reflects you are eligible to earn additional time credits. You were previously advised to work closely with your Unit Team for guidance regarding the First Step Act.

Case No. 3:20cv5990-LC-HTC

Accordingly, this response is for informational purposes only. ECF Doc. 41. In other words, in the final two sentences, the Central Office found that Petitioner had not given the Warden or the Regional Manager a chance to address the issue of the denial of credits despite having been previously instructed to "work closely with [his] Unit Team." The Central Office therefore reminded him that he should work with the Unit Team and declined to issue a response for other than "informational purposes."

Thus, because of his failure to grieve the issue to the Warden or the Regional Director, Petitioner has not properly exhausted this issue. Not only is there a recognized exhaustion requirement for § 2241 petitions, the cases requiring exhaustion "require[] proper exhaustion" as set forth in applicable administrative rules and policies. *Woodford*, 548 U.S. at 93. Exhaustion allows "'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" *Green v. Sec'y for Dep't of Corr.*, 212 F. App'x 869, 871 (11th Cir. 2006) (quoting *Alexander v. Hawk*, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Requiring exhaustion also "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 548 U.S. at 93.

Case No. 3:20cv5990-LC-HTC

As stated above, the Central Office recognized Petitioner had not given the Warden and Regional Director "the chance to discover and correct [their] own errors" before filing the petition. A key reason to require exhaustion is that it allows "'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" *Green v. Sec'y for Dep't of Corr.*, 212 F. App'x 869, 871 (11th Cir. 2006). The petition should therefore be dismissed for Petitioner's failure to exhaust his administrative remedies.

### III. THE PETITION IS PREMATURE

Even if Petitioner had exhausted his administrative remedies,[6] the petition is still subject to dismissal because it is premature. The Unit Manager's response to Petitioner that the FSA provisions at issue do not go into effect until January 15, 2022, was correct.

On December 21, 2018, the FSA was signed into law. Among other things, the FSA provides that, "[n]ot later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review

---

[6] *See Gallo v. Ortiz*, 2021 WL 571600, at *4, n 8 (D.N.J. Feb. 16, 2021), citing *Coleman v. U.S. Parole Comm'n,* 644 F. App'x 159, 162 (3d Cir. 2016) ("exhaustion is not required with regard to claims which turn only on statutory construction") (citing *Harris v. Martin*, 792 F.2d 52, 54 n. 2 (3d Cir. 1986.) (finding exhaustion not required for claim based on statutory interpretation of FSA).

Case No. 3:20cv5990-LC-HTC

Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system." *See* 18 U.S.C.A. § 3632. The Attorney General met that deadline by publicly releasing a risk and needs assessment system on July 19, 2019. *See* First Step Act of 2018 Risk and Needs Assessment System (called the Prisoner Assessment Tool Targeting Estimated Risk and Needs or the "PATTERN").[7] The FSA gave the BOP 180 days, or until January of 2020, to complete the risk and needs assessment for each prisoner, which appears to have occurred in this case. ECF Doc. 16-4 at ¶¶ 6-7.

The FSA also gives the BOP two years after it completes the risk and needs assessment for each prisoner to "phase in" the program implementation. *See* 18 U.S.C. § 3261(h)(2)(A). That 2-year phase-in date has not expired and will not until January 2022. Petitioner's claim is therefore premature and not ripe. *Llewlyn v. Johns*, 2021 WL 535863, at *2 (S.D. Ga. Jan. 5, 2021), *report and recommendation adopted*, 2021 WL 307289 (S.D. Ga. Jan. 29, 2021) ("Because the First Step Act does not require actual implementation for each inmate until January 2022, Llewlyn is not entitled to an order from this Court compelling the BOP to recalculate his time credits. His petition is premature, and his claim is not yet ripe."); *Herring v. Joseph*,

---

[7] Available at https://nij.ojp.gov/sites/g/files/xyckuh171/files/media/document/the-first-step-act-of-2018-risk-and-needs-assessment-system_1.pdf.

Case No. 3:20cv5990-LC-HTC

No. 4:20CV249-TKW-HTC, 2020 WL 3642706, at *1 (N.D. Fla. July 6, 2020) (dismissing petition *sua sponte* "because, as explained in the R&R, Petitioner has no current right to the relief requested in the petition since the Bureau of Prisons (BOP) has until January 2022 to implement the provisions of the First Step Act on which the petition is based").

Petitioner relies upon *Goodman v. Ortiz*, 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020) to argue the Court should compel the BOP to apply a certain amount of FSA credits to Petitioner before the January 2022 deadline. ECF Doc. 13 at 10. In *Goodman*, the court interpreted the FSA as requiring "2-year phase-in, not only of participation in the program, but of incentives for participation in the programs." *Goodman*, 2020 WL 5015613 at * 6. Based on this interpretation, the court went on to conclude that "the BOP must gradually implement the risk recidivism program, including the priority application of incentives to prisoners whose release dates are nearer, such as Petitioner." *Id.*

As an initial matter, the *Goodman* decision, of course, is not binding precedent on this Court and, as discussed above, is contrary to decisions from this Court. Regardless, the undersigned disagrees with the *Goodman* court's conclusion that the FSA requires immediate implementation, even as to those prisoners facing imminent release dates. *See Kennedy-Robey v. FCI Perkin*, 2021 WL 797516 (C.D. Ill. March 2, 2021) (disagreeing with *Goodman*, and stating "If immediate implementation

were mandated, Congress would have used the word 'shall' and not 'may' in 18 U.S.C. § 3621(h)(4)."). While the BOP may, in its discretion, apply time credits for completed programs prior to January 15, 2022, it is not required to do so. *See id.* ("The statutory language indicates that Congress left this determination up to the BOP, while at the same time giving the BOP a deadline of January 15, 2022. Until that date, the Court does not find that Kennedy-Robey has any right to application of earned time credits that this Court can enforce.").

Moreover, Petitioner's case is distinguishable from Goodman's because in *Goodman*, the Respondent either agreed to or simply did not oppose the Goodman's calculation that he had earned 120 days of credit against his sentence under the FSA. *Id.* at *2. Thus, in its order, the *Goodman* court directed the BOP to apply those 120 days of credit to Goodman's sentence.

In the instant case, however, the Respondent and Petitioner do not agree on the amount of proper credits to be awarded, and no factual record has been established by the BOP. *See* ECF Doc. 16 at 23-24 and 28-30. As such, for this Court to intervene, the Court would need to address the following factual questions, all of which are unanswered based on this record:

> (1) What need areas have BOP staff determined Fleming to have?
> (2) Since January 15, 2020, what EBRR[8] programs and productive activities have BOP staff assigned Fleming to do, based on those needs?

---

[8] Evidence based recidivism reduction.

Case No. 3:20cv5990-LC-HTC

> (3) Of the assigned EBRR programs and productive activities, which have Fleming completed?
> (4) For purposes of defining "30 days of successful programming," how many days of programming has the Bureau determined each EBRR program or program activity to be?
> (5) Is Fleming eligible to currently "apply" his credits under § 3624(g)(1)?
> (6) In applying any time credits Fleming has earned, will the Bureau exercise its discretion to place Fleming on supervised release versus into a pre-release placement under § 3624(g)(1)?

ECF Doc. 16 at 20.

The BOP has not had the opportunity to develop those facts because Petitioner did not exhaust his administrative remedies. *See Green v. Sec'y for Dep't of Corr.*, 212 F. App'x 869, 871 (11th Cir. 2006) (a key reason to require exhaustion is that it allows "'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'"); *Workman*, 2021 WL 1080396, at *3 ("This case presents a number of factual disputes best served by creating a complete administrative record. That can only be done if Mr. Workman is required to finish out the administrative exhaustion process.").

Thus, the undersigned finds *Goodman* to be inapposite. *See Workman v. Cox*, 2021 WL 1080396 at * 2 (D. S.D. January 31, 2021) *report and recommendation adopted*, No. CIV 20-4197, 2021 WL 1060205 (D.S.D. Mar. 18, 2021) (declining to follow *Goodman* because, among other reasons, "Mr. Workman's case is not like Goodman. Respondent does *not* agree that he is entitled to all the credits he is

claiming." Thus, "[w]hether Mr. Workman successfully completed his post-FSA programs or activities is also an unanswered factual question on this record."); *See O'Bryan v. Cox*, 2021 WL 983241, at *3 (D.S.D. Jan. 12, 2021), *report and recommendation adopted sub nom. O'Bryan, Jr. v. Cox*, 2021 WL 977792 (D.S.D. Mar. 16, 2021) (same).

## IV.   CONCLUSION

As set forth above, the petition should be dismissed because (1) Petitioner has not exhausted available administrative remedies; and (2) the relief requested by Petitioner is premature.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition under 28 U.S.C. § 2241 be dismissed.

2.   That the clerk be directed to close the file.

Done in Pensacola, Florida, this 7th day of April, 2021.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## **NOTICE TO THE PARTIES**

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u>  An objecting party must serve a copy of its objections upon all other parties.  A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.